**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. REGINA BUNIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-1237 |
| | : | |
| MASHA MOBILE MOVING AND | : | |
| STORAGE, LCC | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                   May 26, 2023

      We today address who may need to pay for a woman's personal possessions lost or damaged when allegedly in the control of a moving and storage company. A Pennsylvanian hired a moving and storage company to first store and then eventually move her personal possessions to a new residence in Illinois. She paid more for upgraded storage and moving services. She claims the mover either lost or destroyed several hundred thousand dollars of her personal property before and during delivery to her new Illinois home. The mover told her to call its insurer. She had no contract or contact with the mover's insurer nor did the mover's insurer have anything to do with storing and then moving her property to Illinois. The mover's insurer told her the losses did not meet the mover's $500 deductible. She now sues the mover and its insurer for her losses. We understand her alleged facts as applied to the mover's conduct. But she offers no basis to sue the mover's insurer under federal law applying to interstate movers. She does not plead a contract relationship with the mover's insurer. We grant the insurer's motion to dismiss finding she did not plead a claim allowing her to sue the insurer under federal law nor did she plead a contract relationship with the mover's insurer.

I.      **Alleged Facts**

Dr. Regina Bunis decided in July 2021 to move from Pennsylvania to Illinois.[1]  She hired professional moving company Masha Mobile Moving and Storage, LLC to first store her personal items while she located housing and then ship those items to her new residence.[2] Masha Mobile's business model includes loading the customer's belongings into padlocked shipping containers and transporting the containers to the customer's new home.[3] Masha Mobile represented offering "a safe and secure moving and storage facility where [Dr.Bunis's] personal property would be safely stored in locked containers untouched by anyone from the moment it left her home until it arrived in Illinois."[4] Dr. Bunis purchased a series of premium services and upgrades including "general packing and unpacking services; disassembly, packing and reassembly of several large furniture items; and specialty packaging and packing services for Dr. Bunis's lawn mowers and tools."[5]

Masha Mobile began to pack Dr. Bunis's household goods and belongings from her Pennsylvania home in July 2021. It packed her personal property into seven separate shipping containers.[6] Masha Mobile employees instructed Dr. Bunis to lock the seven containers with her own padlocks and informed her they would be stored at Masha Mobile's storage facility in Pottstown, Pennsylvania until delivery to Dr. Bunis's next home.[7] Masha Mobile packed and Dr. Bunis locked an additional five containers to be stored in Pottstown, Pennsylvania in August 2022.[8] Dr. Bunis and Masha Mobile signed a bill of lading.[9]

Dr. Bunis decided to relocate from her home in Rose Valley, Pennsylvania to Alton, Illinois. Dr. Bunis purchased a home in Alton, Illinois in November 2022.[10] Dr. Bunis requested Masha Mobile deliver the twelve containers to her Illinois home, unpack her property, and

reassemble her furniture.[11] Masha Mobile quoted Dr. Bunis $29,700 for this service, plus an additional $420 per month in storage fees.[12]

Dr. Bunis's personal property "began to arrive [in Illinois] in moving trucks after her lock [had] apparently been removed and her property . . . insecurely and haphazardly packed for transport on the moving trucks."[13] Masha Mobile damaged the vast majority of Dr. Bunis's personal property during transport, including valuable antiques, gardening tools, a specialty bed, and a crystal chandelier.[14] Dr. Bunis's furniture hardware never arrived.[15] Masha Mobile employees broke her padlocks, rummaged through, and stole many of her possessions.[16] Masha Mobile failed to reassemble several large items of furniture for which Dr. Bunis contracted.[17] Dr. Bunis reported the missing containers and items to Masha Mobile.[18] Masha Mobile attempted to locate or repair the missing items with very limited success.[19] Dr. Bunis inventoried the lost and damaged household goods and made a written demand to Masha Mobile.[20] Masha Mobile charged Dr. Bunis the full $29,700.[21]

Masha Mobile directed Dr. Bunis to submit an insurance claim for her lost and damages items to its insurer The Hanover Insurance Company.[22] Dr. Bunis submitted a claim to Hanover for the damaged and missing items totaling almost $300,000.[23] Hanover denied Dr. Bunis's claim asserting her claim did not exceed Masha Mover's $500 deductible.[24]

## II.    Analysis

Dr. Bunis sued Masha Mobile and Hanover for damages relating to Masha Mobile's mishandling and damaging of her personal property while moving the shipping containers from Pennsylvania to Illinois.[25] Dr. Bunis sued both Masha Mobile and Hanover for violating the Carmack Amendment and for breach of contract.[26] Dr. Bunis also sued Masha Mobile for conversion, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, unjust enrichment, fraud, and negligent infliction of emotional distress.[27]

Hanover now moves to dismiss the Carmack Amendment and breach of contract claims against it.[28] We grant Hanover's Motion to dismiss the Carmack Amendment and breach of contract claims.

### A.  We dismiss Dr. Bunis's Carmack Amendment claim against Hanover.

Hanover moves to dismiss Dr. Bunis's Carmack Amendment claim against it because Hanover is not a carrier.[29]  Hanover argues the Carmack Amendment only governs the liability of common carriers on bills of lading.[30] Hanover contends liability under the Carmack Amendment does not apply to a carrier's insurer.[31] Hanover further contends Dr. Bunis cannot establish a prima facie case under the Carmack Amendment because Dr. Bunis cannot show delivery of goods to Hanover.[32] Dr. Bunis concedes Hanover is not a carrier and is not directly liable under the Carmack Amendment.[33] We agree Hanover is not liable under the Carmack Amendment and dismiss Dr. Bunis's claim against it.

The Carmack Amendment to the Interstate Commerce Act creates a private cause of action for shippers against carriers causing loss or damage during the transportation of a shippers' goods.[34] The Carmack Amendment "imposes liability on a common carrier for the actual loss or injury to goods in an interstate commerce shipment."[35] The Carmack Amendment

specifically provides "[a] carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading."[36] The plain language of Carmack Amendment only "governs the liability of common carriers on bills of lading."[37] A shipper's prima facie case requires proving "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages."[38]

Hanover cannot be held directly liable under the Carmack Amendment. Hanover is undisputedly an insurer of a common carrier, and not a carrier itself.[39] Dr. Bunis's and Masha Mobile's bill of lading does not include Hanover. The Carmack Amendment does not apply to Hanover because it is not a carrier and it did not sign a bill of lading with Dr. Bunis. There are no allegations Dr. Bunis delivered personal property or goods to Hanover. Dr. Bunis did not plead the first element required to establish Carmack Amendment liability against Hanover. We dismiss Dr. Bunis's Carmack Amendment claim against Hanover.

**B.  We dismiss Dr. Bunis's contract claim against Hanover.**

Hanover moves to dismiss Dr. Bunis's breach of contract claim against it arguing: (1) the Carmack Amendment preempts Dr. Bunis's claims, and (2) Dr. Bunis is not in privity with Hanover Insurance.[40]

Hanover first argues all claims relating to the delivery, loss of, and damages of Dr Bunis's household goods are preempted by the Carmack Amendment.[41] Hanover argues the Carmack Amendment provides the exclusive remedy for causes of action "involving losses of or damages caused by interstate shipment of household goods by common carriers under a bill of lading."[42]

Dr. Bunis counters the Carmack Amendment only preempts claims against carriers for injuries resulting directly from the loss of property shipped across state lines.[43] Dr. Bunis contends Hanover is an insurer, not a carrier, so the Carmack Amendment does not apply. Dr. Bunis also argues she alleges damages resulting only from the storage and packing of her property in Pennsylvania, which is not preempted by the Carmack Amendment because it does not involve shipping of goods across state lines.[44]

Hanover then argues Dr. Bunis cannot maintain a direct claim against it because she does not have a contractual or legal relationship with Hanover.[45] Hanover argues Pennsylvania law is well-settled: a third-party claimant cannot bring or maintain a direct action against an alleged tortfeasor's liability insurer under any theory.[46] Dr. Bunis counters she alleged privity with Hanover.[47]

We find Dr. Bunis's claims are not preempted by the Carmack Amendment, but she cannot sue Hanover under a direct theory because Hanover and Dr. Bunis do not have a contractual or legal relationship. We dismiss Dr. Bunis's breach of contract claim against Hanover.

The Carmack Amendment "preempts all state law or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments."[48] Our Court of Appeals has instructed "state law breach of contract and negligence claims against a carrier for loss of or damage to goods [while in interstate transit] are preempted" by the Carmack Amendment.[49] But the Carmack Amendment "does not preempt causes of action against the shipper or other non-carrier."[50] The Carmack Amendment "only preempts claims for damage caused by the carrier, and does not preclude suit against non-carrier entities to the extent that they are liable under other law.[51] In *Pelletron Corporation v. C.H. Robinson Worldwide, Inc.*, Judge Schiller analyzed

in a Carmack Amendment case whether a party acted as a broker or carrier of interstate shipment of goods.[52] Judge Schiller acknowledged "contrasted with a carrier, a broker is not liable under the Carmack Amendment."[53] Judge Schiller ultimately found claims against a non-carrier broker would not be preempted by the Carmack Amendment because the Carmack Amendment governs carriers only.[54]

Dr. Bunis's claims against Hanover are not preempted by the Carmack Amendment. It is undisputed Hanover is an insurer and not a carrier. Both Dr. Bunis and Hanover agree, as discussed above, the Carmack Amendment does not apply to Hanover because Hanover is not a carrier.[55] The Carmack amendment does not preempt Dr. Bunis's breach of contract claim against non-carrier Hanover. We next determine whether Dr. Bunis has sufficiently alleged a breach of contract claim against Hanover. We conclude she has not.

Pennsylvania law requires privity for a breach of contract claim.[56] Fundamental contract law requires "one cannot be liable for breach of contract unless one is a party to that contract."[57] Our Court of Appeals instructs "[i]t is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create such a right."[58]

An exception to the general rule a party must be a signatory to the contract to sue grants "intended third party beneficiaries standing to pursue a breach of contract claim."[59] For an intended third-party beneficiary to recover on a contract, "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself."[60] In *Holovich v. Progressive Specialty Insurance Company*, Judge Smith dismissed a breach of contract claim against a tortfeasor's insurance company for lack of third-party standing because "[t]here is no allegation in the complaint that

the . . . policy contained any provision expressly providing that an injured party could pursue a claim against Progressive."[61] Judge Smith found the injured party did not have a direct contractual relationship with Progressive nor did the signatories to the contract intend the injured party to be an intended third party beneficiary and dismissed the breach of contract claim.[62]

We find Dr. Bunis does not allege direct or intended third-party standing to pursue a breach of contract claim against Hanover. Dr. Bunis does not allege she is a signatory to the insurance contract between Hanover and Masha Mobile.[63] Dr. Bunis does not allege she has contract standing with Hanover. She does not have direct standing to sue Hanover.[64] We are also persuaded by Judge Smith's reasoning in *Holovich*. We find Dr. Bunis does not have intended third-party standing.[65] Dr. Bunis, despite arguing she alleges privity, does not allege she is an intended third-party beneficiary.[66] Dr. Bunis alleges no facts Masha Mobile and Hanover intended Dr. Bunis to be a beneficiary or facts showing the policy contains a provision "providing that an injured party could pursue a claim against" Hanover.[67] We must dismiss Dr. Bunis's breach of contract claim against Hanover.

## III.    Conclusion

We grant Hanover's Motion to dismiss. We dismiss Dr. Bunis's Carmack Amendment claim against Hanover because Hanover is not a carrier. We dismiss Dr. Bunis's breach of contract claim against Hanover because she lacks privity and intended third-party beneficiary standing to pursue this claim.

---

[1] ECF Doc. No. 1 ¶ 31.

[2] *Id.* ¶¶ 19–21.

[3] *Id.* ¶ 20.

[4] *Id.* ¶ 34.

[5] *Id.* ¶ 36.

[6] *Id.* ¶ 37; *see also* 49 U.S.C.A. § 13102 ("The term 'household goods', as used in connection with transportation, means personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is-- (A) arranged and paid for by the householder, except such term does not include property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder; or (B) arranged and paid for by another party.).

[7] ECF Doc. No. 1 ¶ 38.

[8] *Id.* ¶ 39.

[9] *Id.* ¶ 41.

[10] *Id.* ¶ 44.

[11] *Id.*

[12] *Id.* ¶¶ 43, 45.

[13] *Id.* ¶ 47.

[14] *Id.* ¶¶ 48–50.

[15] *Id.* ¶ 51.

[16] *Id.* ¶ 52–53.

[17] *Id.* ¶ 54.

[18] *Id.* ¶ 55.

[19] *Id.* ¶ 56–57.

[20] *Id.* ¶ 65.

[21] *Id.* ¶62.

[22] *Id.* ¶¶ 66–67.

[23] *Id.* ¶ 67–69. *See also* ECF Doc. Nos. 1-1(inventory of damaged or missing items), 1-2 (photographs of missing or damaged items).

---

[24] *Id.* ¶ 69.

[25] ECF Doc. No. 1 at 14–24.

[26] *Id.* ¶¶ 71–88; 49 U.S.C. § 14706; 49 C.F.R. 375.101.

[27] ECF Doc. No. 1 ¶¶ 89–118; 73 P.S. § 201-1. We construe Dr. Bunis as alleging only Carmack Amendment violations and breach of contract against Hanover. *See* ECF Doc. No. 10-2 at 2, n. 1 ("Hanover is named in Count I for violations of the Carmack Amendment, 49 USC § 14706, et. seq., and Count II for Breach of Contract. Although Count IV is against "all defendants" for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the allegations of this count pertain to Masha Mobile, only. The remaining allegations are against Masha Mobile, only."). Dr. Bunis's claims against Masha Mobile remain unaffected by today's Order.

[28] ECF Doc. No. 10. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d

Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[29] ECF Doc. No. 10.

[30] ECF Doc. No. 10-2 at 4.

[31] *Id.*

[32] *Id.* at 4–5.

[33] ECF Doc. No. 11 at 7.

[34] *Kotick v. Atlas Van Lines, Inc.*, No. 18-11916, 2019 WL 5388163, at *2 (D.N.J. Oct. 22, 2019) (citing *S & H Hardware & Supply Co. v. Yellow Transp., Inc.*, 432 F.3d 550, 554 (3d Cir. 2005) ("The Carmack Amendment provides for liability of common carriers for damage to or loss of goods during shipment."). *See also* 49 U.S.C. § 14706(d).

[35] *Mallory v. Allied Van Lines, Inc.*, No. 02-7800, 2003 WL 22391296, at *2 (E.D. Pa. Oct. 20, 2003) (citing *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 n. 4 (3d Cir.2001)).

[36] 49 U.S.C.A. § 14706(a)(1).

[37] *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003). A bill of lading is a transportation contract between a shipper/consignor and a carrier. *Id.* (citing *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3d Cir.1993).

[38] *Paper Magic Grp., Inc.*, 318 F.3d at 461 (quoting *Beta Spawn, Inc.*, 250 F.3d at 223).

[39] *See* ECF Doc. No. 10-2 at 4–5; ECF Doc. No. 11 at 7.

[40] ECF Doc. No. 10.

[41] ECF Doc. No. 10-2 at 5–8.

[42] *Id.* at 6 (citing *Strike v. Atlas Van Lines*, 102 F. Supp. 2d 599, 600 (M.D. Pa 2000)). We acknowledge Hanover first argues the Carmack Amendment does not apply to it because Hanover is not a carrier, but then proceeds to argue the Carmack Amendment, which prevents state and common law claims against carriers only, should preempt Dr. Bunis's common law claim against non-carrier Hanover. *See* ECF Doc. Nos. 10-2 at 4–8; ECF Doc. No. 11 at 7.

[43] ECF Doc. No. 11 at 7–11.

[44] We do not address Dr. Bunis's second argument arguing injuries resulting from intrastate shipping and storage are not preempted by the Carmack Amendment because it does not involve

interstate shipment of household goods. We find the Carmack Amendment does not apply to Hanover as it Hanover is not a carrier.

[45] ECF Doc. No. 10-2 at 8-10.

[46] *Id.*

[47] ECF Doc. No. 11 at 6.

[48] *Certain Underwriters at Int. at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 336 (3d Cir. 2014) (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.,* 89 F.3d 452, 456 (7th Cir.1996). *See also Certain Underwriters*, 762 F.3d at 336 ("Courts of Appeals from the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have consistently held that the Carmack Amendment is the 'exclusive cause of action for interstate-shipping contract [and tort] claims alleging loss or damage to property.'") (internal citations omitted).

[49] *Certain Underwriters,*762 F.3d at 336 (citing *Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 407–08 (3d Cir.2008).

[50] *Daily Exp. v. Maverick Transp., LLC*, No. 10-1168, 2010 WL 5464452, at *2 (M.D. Pa. Dec. 9, 2010).

[51] *Taylor v. Allied Van Lines,* No. 08-1218, 2008 WL 5225809, at *3 (D. Ariz. Dec. 15, 2008). *See also Campbell v. Allied Van Lines, Inc.*, 410 F.3d 618, 620 (9th Cir.2005) ("The Carmack Amendment preempts many state and common law claims *against carriers* in an effort to create a national scheme of carrier liability for goods damages or lost during interstate shipment.") (emphasis added).

[52] *Pelletron Corp. v. C.H. Robinson Worldwide, Inc.*, No. 11-6944, 2012 WL 3104845, at *3 (E.D. Pa. July 31, 2012).

[53] *Id.* (citing *Hewlett–Packard Co. v. Brother's Trucking Enters.*, Inc., 373 F.Supp. 1349, 1351 (S.D.Fla.2005) ("The Carmack Amendment governs carriers, not brokers.").

[54] *Pelletron Corp.*, 2012 WL 3104845, at *2–3 (citing *Cont'l Cas. v. Quick Enters.*, No. 12–2351, 2012 WL 2522970, at *2 (D.N.J. June 29, 2012) ("The Third Circuit has also not addressed whether the Carmack Amendment preempts state law claims raised against freight brokers. It appears, however, that several other courts have considered the issue and found that the Carmack Amendment does not preempt such claims.")).

[55] ECF Doc. No. 10-2 at 4–5; ECF Doc. No. 11 at 7.

[56] *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486 (E.D. Pa. 2016).

[57] *Id.* (citing *Electron Energy Corp. v. Short*, 408 Pa.Super. 563 (1991)).

[58] *Holovich v. Progressive Specialty Ins. Co.*, 600 F. Supp. 3d 572, 579 (E.D. Pa. 2022) (quoting *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 632 (3d Cir. 1998)).

[59] *Republic Servs. of Pennsylvania, LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 476 (E.D. Pa. 2018) (citing *Guy v. Liederbach*, 501 Pa. 47 (1983)).

[60] *Republic Servs. of Pennsylvania, LLC*, 301 F. Supp. 3d at 476 (quoting *Scarpitti v. Weborg*, 530 Pa. 366 (1992)).

[61] *Holovich*, 600 F. Supp. 3d at 579.

[62] *Id.* at 579–80.

[63] We have not seen an insurance contract. The parties did not attach a copy of the insurance contract to their filings.

[64] *See Electron Energy Corp. v. Short*, 408 Pa.Super. 563 (1991).

[65] *Holovich*, 600 F. Supp. 3d at 579.

[66] *See* ECF Doc. Nos. 1, 11 at 6.

[67] *Holovich*, 600 F. Supp. 3d at 579; *See* ECF Doc. No. 1.