IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DR. REGINA BUNIS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-1237** |
| | : | |
| **MASHA MOBILE MOVING AND** | : | |
| **STORAGE, LCC** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                           **July 12, 2023**

Congress decided over a hundred years ago to preempt breach of contract, fraud, negligence, and related state law claims brought by disappointed customers of interstate moving services against a moving company for property damage when the mover possessed the property set to move across state lines. We must apply an exceedingly broad preemptive mandate inclusive of state law breach of contract, fraud, and negligence claims when the disappointed customer sues the moving company for conduct addressed by Congress in the Carmack Amendment to the Interstate Commerce Act. We today review a customer's claim for damages caused by loss and damage to valuable personal items while allegedly in the possession of the moving company hired to take her personal items from a Pennsylvania home to a new Illinois home. The customer sues the mover under the Carmack Amendment. But she also sues the mover for breach of contract, conversion, violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law, unjust enrichment, fraud, and negligent infliction of emotional distress. The mover seeks to dismiss all the claims other than the Carmack Amendment remedies citing Congress's broad preemptive mandate. We studied the customer's allegations. We agree with the mover finding Congress preempted these claims. We dismiss these state law claims as presently plead without prejudice.

I.   **Alleged Facts**

Dr. Regina Bunis decided in July 2021 to move from Pennsylvania to Illinois.[1] Dr. Bunis suffers from "physical disabilities resulting from her service [with] an international trauma team responding to the September 11, 2001 terror attacks in New York City."[2] Dr. Bunis contracted with Masha Mobile Moving and Storage, LLC to move her possessions including a specialty bed.[3] She selected Masha Mobile because of its emphasis on secure storage services.[4] Dr. Bunis hired Masha Mobile and purchased a series of premium services for "general packing and unpacking services, disassembly, packing and reassembly of several large furniture items, and specialty packaging and packing services for [her] lawn mowers and tools."[5] Dr. Bunis and Masha Mobile signed a bill of lading.[6]

Masha Mobile packaged Dr. Bunis's possessions into twelve 15' x 15' storage containers between July 2021 and August 2022.[7] Dr. Bunis locked each storage container with her own padlocks before Masha Mobile transported the containers to its Pennsylvania storage facility.[8] Masha Mobile charges $420 per month for storage before transport.[9] Dr. Bunis believed "[her] personal property would be safely stored in locked containers untouched by anyone from the moment it left [her] home until it arrived [at her final destination]."[10] Masha Mobile stored Dr. Bunis's belongings until November 2022 when Dr. Bunis moved to Illinois.[11]

Masha Mobile's employees appeared to have tampered with Dr. Bunis's property and storage containers by the time they arrived in Illinois in November 2022 without padlocks.[12] Masha Mobile lost several of Dr. Bunis's items of sentimental and monetary value, including antiques, gardening tools, furniture hardware, her specialty bed, and a crystal chandelier.[13] Masha Mobile damaged Dr. Bunis's personal property as well.[14] Dr. Bunis is unaware of the extent of damages, including items lost.[15]

2

Masha Mobile refused to adjust billings despite the apparent damages. It instead charged Dr. Bunis "$29,700.00 in quoted shipping fees."[16] Dr. Bunis proactively reported damages observed and "made a written demand upon [Masha Mobile] to recompense [her] the value of the property it had damaged, lost or stolen."[17] Dr. Bunis estimated over $300,000 in damages for lost and damaged items.[18] The Hanover Insurance Company insures Masha Mobile. Hanover denied "Dr. Bunis's claim asserting [it] did not exceed [Mobile Masha's] $500.00 deductible."[19]

Dr. Bunis sued Masha Mobile and Hanover for damages relating to Masha Mobile's mishandling and damaging of her personal property while storing and moving the shipping containers from Pennsylvania to Illinois.[20] Dr. Bunis alleged Masha Mobile failed to adequately deliver, unpack, and reassemble Dr. Bunis's possessions "despite [its] representations, contractual obligations, and statutory obligations."[21] Dr. Bunis sued both Masha Mobile and Hanover for violating the Carmack Amendment and for breach of contract.[22] Dr. Bunis also sued Masha Mobile for conversion, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, unjust enrichment, fraud, and negligent infliction of emotional distress.[23] Dr. Bunis seeks to recover more than $300,000 in damages from Masha Mobile and Hanover.

## II. Analysis

Masha Mobile now moves to dismiss Dr. Bunis's claims for breach of contract; conversion; violations arising under the Pennsylvania Unfair Trade Practices and Consumer Protection Law; unjust enrichment; fraud; and negligent infliction of emotional distress.[24] We grant Masha Mobile's motion to dismiss as Congress preempts these claims under the Carmack Amendment to the Interstate Commerce Act.

Masha Mobile argues the Carmack Amendment's preemption provision bars Dr. Bunis "from bringing a suit on the basis of statute or common law action for losses or damages caused

by the interstate shipment of household goods by common carriers."[25] Masha Mobile argues Dr. Bunis is preempted from raising claims arising from loss or damage of goods transported and stored solely within Pennsylvania because her goods ultimately shipped interstate.[26]

Dr. Bunis counters the Carmack Amendment does not preempt her state and common law claims arising from Masha Mobile's conduct solely within Pennsylvania.[27] She argues the intrastate shipment and storage of her goods in Pennsylvania are an independent transaction from the eventual interstate shipment of those goods to her Illinois home.[28] Dr. Bunis also argues Masha Mobile is possibly a broker, and not a carrier as defined by the Carmack Amendment.[29] But Dr. Bunis does not allege Masha Mobile is a broker.[30] Dr. Bunis only alleges "[Masha Mobile] is a Carrier as defined in the Carmack Amendment and the Household Goods Consumer Protection Regulations."[31] We will not consider Dr. Bunis's broker argument today because she does not allege it.

Congress, through the Carmack Amendment to the Interstate Commerce Act, imposes liability on carriers "for all damages incurred by the shipper while the shipped goods are in the possession and control of the carrier."[32] Masha Mobile is a carrier under the Carmack Amendment.[33] A shipper must prove "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages" to establish a prima facie case.[34] Dr. Bunis alleged Masha Mobile is a carrier subject to Carmack Amendment liability.[35] Dr. Bunis now disputes whether Masha Mobile is a "carrier" or a "broker" who can be held directly liable under the Carmack Amendment.[36] But Masha Mobile is not seeking to dismiss Dr. Bunis's Carmack Amendment claim today.[37] We do not address the merits of Dr. Bunis's Carmack Amendment claim.

We instead must address whether Congress, through the Carmack Amendment, preempts Dr. Bunis's other claims. Congress, through the Carmack Amendment, "preempts all state law or common law remedies available to a shipper against a carrier [under a bill of lading] for loss or damage to interstate shipment."[38] Congress defines covered transportation services as "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, [and] unpacking."[39] Our Court of Appeals instructs the Carmack Amendment has exceedingly broad preemptive force inclusive of state law breach of contract and negligence claims.[40] The Supreme Court reminds us "the Carmack Amendment is 'comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination.'"[41] The United States Court of Appeals for the Fifth Circuit instructed, in *Moffit v. Berkins Van Lines Company*, Congress preempted claims arising from misrepresentation, fraud, and intentional infliction of emotional distress when proceeding under the Carmack Amendment.[42] The United States Court of Appeals for the Eighth Circuit instructed, in *Fulton v. Chicago, Rock Island & P.R. Company*, the Carmack Amendment governs claims arising from failure to fulfill, or negligent performance of an interstate contract for the transportation of goods.[43]

Temporary storage related to the interstate shipment of goods is covered by the Carmack Amendment. Judge Smith in *York v. Day Transfer Company* found Congress in the Carmack Amendment preempted a negligence claim alleging a breach of "the duty to exercise care in the *storage and delivery*" of goods.[44] Judge Ezra in *Tayloe v. Kachina Moving & Storage, Inc.* held Congress through the Carmack Amendment preempted state law claims because the bill of lading covered both "transportation and storage" of goods.[45] A plain reading of the Carmack Amendment also identifies "storage" as a service covered by the preemption clause.[46]

5

Congress in the Carmack Amendment preempts state law and common law claims for *intrastate* shipment "if the final intended destination at the time shipment begins is another state."[47] Judge Rodriguez found the Carmack Amendment did not apply in *BMW Auto Sales, Inc. v. Red Wolf Logistics, LLC* when the "complaint alleges a purely intrastate shipment of property" and the "information before the Court only suggests a shipment within Texas."[48]

Dr. Bunis hired Masha Mobile for both the storage and transportation of her goods from Pennsylvania to Illinois.[49] The bill of lading required Dr. Bunis pay $29,700 for moving services and $420 per month for storage services before the interstate shipment of Dr. Bunis's goods.[50] We agree with Judge Smith and Judge Ezra's reasoning Congress preempted state law claims relating to the transportation and temporary storage of Dr. Bunis's goods in Pennsylvania under the Carmack Amendment.[51]

Masha Mobile cannot be held liable for the state law or common law claims, including claims arising under temporary storage of goods in Pennsylvania with the ultimate goal of interstate shipment to Illinois.[52] We distinguish Judge Rodriguez's reasoning with admitted shipping solely in one state addressed in *BMW Auto Sales, Inc* because Dr. Bunis "engaged" Masha Mobile to "safely and securely pack, store, and then transport her Household Goods from Pennsylvania to her new home in Illinois."[53] Dr. Bunis plainly agreed Masha Mobile would transport her property from Pennsylvania to Illinois.[54] Congress requires we dismiss Dr. Bunis's state law claims as preempted by the broad preemptive force of the Carmack Amendment.[55]

**III. Conclusion**

We grant Masha Mobile's Motion to dismiss all claims other than those under the Carmack Amendment. We dismiss Dr. Bunis's state law and common law claims.

---

[1] ECF 1 ¶ 31.

---

[2] *Id.* ¶ 58.

[3] *Id.* ¶ 31.

[4] *Id.* ¶ 26.

[5] *Id.* ¶ 36.

[6] *Id.* ¶ 41.

[7] *Id.* ¶¶ 37, 39.

[8] *Id.* ¶ 40.

[9] *Id.* ¶ 43.

[10] *Id.* ¶ 34.

[11] *Id.* ¶34, 44.

[12] *Id.*

[13] *Id.* ¶¶ 48–51.

[14] *Id.*

[15] *Id.* ¶ 42.

[16] *Id.* ¶ 62.

[17] *Id.* ¶ 65.

[18] *Id.* ¶ 69.

[19] *Id.*

[20] ECF 1. We granted Hanover's motion to dismiss because it is not directly liable under the Carmack Amendment or in a contractual relationship with Dr. Bunis. ECF 13, 14.

[21] *Id.* ¶ 46.

[22] *Id.* ¶¶ 71–88; 49 U.S.C. § 14706; 49 C.F.R. 375.101.

[23] ECF 1 ¶¶ 89–118; 73 P.S. § 201-1.

[24] ECF 15. Dr. Bunis must state a claim upon which relief can be granted to proceed beyond a motion to dismiss. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[25] ECF 15-2 at 2. *See Strike v. Atlas Van Lines*, 102 F. Supp. 2d 599, 600 (M.D. Pa. 2000).

[26] ECF 15-2 at 2.

[27] ECF 16-1 at 7–9.

[28] *Id.* Dr. Bunis "respectfully requests leave to amend the Complaint based upon the "true conversion" exception explained by our Court of Appeals in *Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*, 762 F.3d 332, 335-38 (3d Cir. 2014). Dr. Bunis hopes to amend her Carmack Amendment claims to more clearly plead even if the claim is governed by the Carmack Amendment, because Masha Mobile did not merely damage goods, but appears to have stolen material portions, the true conversion exception applies, excepting this case from the Carmack Amendments limitations on liability. ECF 16-1 at 9. We do not address Dr. Bunis's "true conversion" exception argument today as she does not plead them. We will afford the parties time

8

to amend consistent with Rule 11 as part of our trial scheduling Order to be entered later this month.

[29] ECF 16-1 at 9–11.

[30] *See* ECF 1.

[31] *Id.* ¶ 73.

[32] 49 U.S.C. § 14706; 49 C.F.R. 375.101.

[33] 49 USC § 13102(3) ("The term 'carrier' means a motor carrier, a water carrier, and a freight forwarder.")

[34] *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (quoting *Beta Spawn, Inc. v. FFE Transp. Servs.*, 250 F.3d 218, 223 n. 4 (3d Cir. 2001)).

[35] ECF 1 ¶ 73.

[36] ECF 16-1 at 9–11.

[37] *See* ECF 15.

[38] *Certain Underwriters at Interest at Lloyd's of London v. United Parcel Serv. of Am.*, 762 F.3d 332, 335–37 (3d Cir. 2014) (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996)).

[39] 49 U.S.C. § 13102(23)(B).

[40] *Certain Underwriters at Interest at Lloyd's of London*, 762 F.3d 335–37.

[41] *Glass v. Crimmins Transfer Co.*, 299 F. Supp. 2d 878, 887 (C.D. Ill. 2004) (quoting S*outheastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936)).

[42] *Moffit v. Berkins Van Lines Co.*, F.3d 305, 306-07 (5th Cir. 1993).

[43] *Fulton v. Chicago, Rock Island & P.R. Co.*, 481 F.2d 326, 331 (8th Cir. 1973).

[44] *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 301 (D.R.I. 2007) (emphasis added).

[45] *Tayloe v. Kachina Moving & Storage, Inc.*, 16 F. Supp. 2d 1123, 1128 (D. Ariz. 1998). *See also Newens v. Orna Servs., Inc.*, No. 02-01570, 2002 WL 1310734, at *3 (N.D. Cal. June 10, 2002) (finding the Carmack Amendment preempted conversion, theft, and intentional misrepresentation claims when parties entered "into a single agreement that encompassed the storage and moving of her possessions, with the overall goal of completing a move from Brooklyn to San Francisco").

---

[46] *See* 49 U.S.C. § 13102(23)(B).

[47] *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 75 (2d Cir. 2001). *See also Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976) ("It is elemental that a carrier is engaged in interstate commerce when transporting goods either originating in transit from beyond Texas or ultimately bound for destinations beyond Texas, even though the route of the particular carrier is wholly within one state.").

[48] *BMW Auto Sales, Inc. v. Red Wolf Logistics, LLC*, No. 21-14647, 2022 WL 613849, at *2 (D.N.J. Mar. 2, 2022).

[49] ECF 1 ¶¶ 19-70.

[50] *Id.* ¶¶ 41, 43, 45, 62.

[51] *York*, 525 F. Supp. 2d at 301; *Tayloe*, 16 F. Supp. 2d at 1128.

[52] ECF 1 ¶¶ 34–38.

[53] *Id.* ¶ 3.

[54] *Id.*

[55] *Certain Underwriters at Interest at Lloyd's of London*, 762 F.3d at 335–37.